# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TRACY BEAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15 CV 58 DDN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Tracy Beam for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and supplemental security income under Title XVI of that Act, 42 U.S.C. § 1381, et seq. For the reasons set forth below, the final decision of the Commissioner of Social Security is affirmed.

## BACKGROUND

Plaintiff was born February 14, 1965. (ECF No. 12 at 38.) She filed her applications on July 3, 2012. (Id. at 196.) She alleged an onset date of June 20, 2008, and alleged disability due to depression, blood pressure, thyroid problems, back pain, anxiety, concentration, memory, plantar fasciitis, frustration, and problems with self-esteem and motivation. (Id. at 18-29, 196.) Plaintiff's applications were initially denied, and she requested a hearing before an ALJ. (Id. at 118-19.)

On December 12, 2013, after a hearing, the administrative law judge (ALJ) issued a decision unfavorable to plaintiff. (Id. at 13-28.) On January 2, 2014, plaintiff requested a review by the Appeals Council. (Id. at 8-12.) On February 11, 2014, the Appeals

Council denied plaintiff's request for review. (Id. at 1-6.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## MEDICAL AND EDUCATIONAL HISTORY

In April 2011, during the initial examination, Stephanie Miller, M.D., of Southeast Primary Care, diagnosed abnormalities in plaintiff, who was 46 years old, including inappropriate behavior for her age, poor insight, and poor judgment. (Id. at 347.)  During this visit Dr. Miller also diagnosed depression with anxiety. (Id.)

In June 2011, plaintiff saw Kishore Khot, M.D., from Community Counseling Center, for an initial evaluation.  (Id. at 334-37.) During this evaluation he diagnosed major depression, recurrent and generalized anxiety disorder and assessed a Global Assessment of Functioning (GAF) score of 55.[1] (Id. at 337.)  Dr. Khot discontinued plaintiff's Abilify (used to treat depression) and Valium (used to treat anxiety) prescriptions and continued Zoloft (used to treat depression and social anxiety) while writing a new prescription for Xanax (used to treat anxiety). (Id.)  Previously, plaintiff was seen by Bootheel Counseling Services from January 2011 to May 2011.  (Id. at 622-63.)

On June 12, 2011, plaintiff was seen at the emergency room for depression after she admitted taking 27 Xanax pills during the previous two days.  (Id. at 431-32.) Following the emergency room visit, plaintiff visited Dr. Miller on June 13, 2011, where the doctor diagnosed plaintiff with depression with anxiety, and hypothyroidism. (Id. at 350.)  Plaintiff visited Dr. Khot on June 22, 2011, as a follow up from the emergency

---

[1] A GAF score, short for Global Assessment of Functioning, helps summarize a patient's overall ability to function.  A GAF score has two components.  The first component covers symptom severity and the second component covers functioning.  A patient's GAF score represents the worse of the two components.

A score from 51 and 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functions (e.g. no friends, unable to keep a job).  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32–34 (4th ed. 2000) ("DSM-IV-TR").

visit, and said she had been off Xanax for a week. (Id. at 486.)  Dr. Khot discontinued the Xanax prescription but continued Zoloft.  (Id.)

In July 2011, plaintiff again visited Dr. Miller and received testing for hypothyroid condition, which found no problems. (Id. at 352.)   In August 2011, plaintiff visited Dr. Khot where she reported more anxiety without any new stressors causing Dr. Knot to restart her Vistaril (used to treat anxiety) prescription. (Id. at 485.)  On September 14, 2011, plaintiff reported she was continuing to experience anxiety and stated she did not believe Vistaril was working. (Id. at 484.)   This appointment caused Dr. Khot to discontinue Vistaril and restart the Valium prescription.  (Id.)

During an October 13, 2011 visit Dr. Miller reported plaintiff's hypothyroid lab work again looked "great." (Id. at 358.)  On November 8, 2011, plaintiff reported to Dr. Khot she was feeling better and she believed her medications seemed to be working.  (Id. at 483.)   On November 28, 2011, plaintiff saw Steven Mellies, D.O., of Neurologic Associates.  (Id. at 342.)  Dr. Mellies diagnosed plaintiff with a history of generalized seizures, beginning approximately three years earlier.  (Id.)   All seizures have been controlled in recent years due to medication. (Id.)  Dr. Mellies also diagnosed related headaches which plaintiff consistently had for the previous couple of months. (Id.)

On February 16, 2012, plaintiff returned to Dr. Khot who reported she was doing better on her medications and was enjoying some social activities including scrapbooking.  (Id. at 487.)  Dr. Khot noted plaintiff was "less anxious" and did not update any of her medications. (Id.)

On June 7, 2012, plaintiff first complained to Dr. Miller of back pain.  (Id. at 372.) Dr. Miller examined plaintiff and observed left sacroiliac joint tenderness but no other abnormalities. (Id. at 373.)  Further, on July 13, 2012, plaintiff's back pain was stable and Dr. Miller's examination showed some pain when loading the left sacroiliac joint but no other abnormalities. (Id. at 375-76.)   A lumbar spine x-ray revealed only mild disc narrowing. (Id. at 426.)

On September 5, 2012, plaintiff reported to Dr. Khot she continued to do well but encountered a lot of anxiety in the middle of the day.  (Id. at 482.) On the same day, Joan

Singer, Ph.D., completed a Psychiatric Review Technique form upon a request from the Disability Determination Services. (Id. at 62-68.) Dr. Singer concluded plaintiff had moderate limitations in daily living activities. (Id. at 64.) At the same time, Dr. Singer completed a mental residual functional capacity ("RFC") assessment which indicated plaintiff had moderate understanding and memory limitations, but was not significantly limited due to any mental condition including depression or anxiety. (Id. at 65-66.)

On October 12, 2012, Dr. Khot completed a Medical Source Statement-Mental ("MSSM"). (Id. at 453-54.) In the statement Dr. Khot, using a checkbox form, noted plaintiff had extreme impairment in 16 of 20 areas of mental functioning. (Id.)

On October 30, 2012, after plaintiff reported persistent back pain, Dr. Miller completed a Medical Source Statement-Physical ("MSSP"). (Id. at 456-57.) In the MSSP, Dr. Miller reported plaintiff had exertional limitations. (Id.)

On December 2, 2012, a state medical consultant, Shital Patel, M.D., completed a Physical RFC Assessment. (Id. at 458-63.) In the assessment he found plaintiff could do work at a light exertion level, if the work avoided concentrated exposures to extreme cold, humidity, and hazards. (Id. at 461.) Further Dr. Patel reviewed Dr. Miller's earlier MSSP and determined her "recommendations are not supported by [her] own findings on exam and treatment plan for stated complaints." (Id. at 462.)

On December 4, 2012, a state appointed medical consultant, Hillel Raclaw, Ph.D., completed a Psychiatric Review Technique. (Id. at 464-74.) Dr. Raclaw found insufficient evidence to render an opinion and suggested a comprehensive mental examination was required to correctly assess the mental capacity of plaintiff. (Id. at 474.)

On January 16, 2013, plaintiff reported to Dr. Khot she was experiencing more crying spells and greater depression without more stressors occurring in her life. (Id. at 480.) Dr. Khot prescribed Deplin (used to treat depression) while continuing all her other medications. (Id.) On February 22, 2013 plaintiff returned to Dr. Khot and reported she was having fewer crying spells and the depression had lessened. (Id. at 478.) Dr. Khot continued her medications without further changes. (Id.)

On January 22, 2013, plaintiff reported worsening back pain to Dr. Miller who reported plaintiff had decreasing strength and reflexes. (Id. at 507-08.) Plaintiff returned on February 5, 2013, and Dr. Miller referred her to pain management after she reported continued back pain. (Id. at 505.) The back pain continued through plaintiff's appointment with Dr. Miller on March 14, 2013. (Id. at 502.)

On April 25, 2013, plaintiff received care at St. Francis Medical Center where she was diagnosed with lumbar back pain after an EMG revealed sacroiliitis. (Id. at 526.) Also on April 25, 2013, plaintiff reported to Dr. Khot she was doing well on her medications and had no side effects. (Id. at 476.) Dr. Khot continued all medications without any changes. (Id.) On May 3, 2013, Dr. Scott, at St. Francis, performed a spinal fusion to correct the sacroiliitis. (Id. at 533-34.) On June 10, 2013, plaintiff saw Dr. Miller for nausea and diarrhea which Dr. Miller correlated with her recent fusion surgery. (Id. at 496-97.)

## ALJ HEARING

The ALJ conducted a hearing on November 14, 2013. (Id. at 34-57.) Plaintiff appeared and testified to the following. She is divorced and living with her father and their small dog. She has a high school diploma and attended cosmetology school at Macon University for two semesters. She lost Medicaid coverage in April of 2013 and has reapplied. (Id. at 38-40.)

She last worked in 2008 at the Mississippi County Sheriff's Department as a jail administrative assistant. She worked there for three months before being terminated. Prior to this work as an administrative assistant, she worked as an assistant bookkeeper, cashier, office manager, accounting clerk, and administrative assistant. (Id. at 40-43.)

She is currently taking medicine for thyroid problems, blood pressure, depression, and nausea. She regularly sees a primary care physician and a psychiatrist. She has not drunk alcohol for over two years, after previously having problems with alcoholism, and is not currently taking any illicit drugs including narcotics and marijuana. (Id. at 44-46.)

In May 2013, plaintiff had fusion surgery for her sacroiliitis causing constant pain and nausea. After surgery she was diagnosed with gastroparesis. To combat this disease she was put on a trial medication called Domperidone (used to treat nausea and vomiting). During the trial period she lost her Medicaid coverage forcing her to stop the trial due to medical costs associated with the side effects. Also, after the surgery, plaintiff fell and injured her back requiring Percocet (used to treat pain) in order to manage the pain. Lastly, she was diagnosed with H.pylori, causing her to lose the ability to take any anti-inflammatory drugs. (Id. at 46-49.)

When questioned by her attorney, plaintiff testified she was diagnosed with depression in 2004. Since moving in when her father, in October 2013, the depression has gotten worse. Plaintiff testified there are now more bad days than good ones. Her back pain, caused from her fall after the fusion surgery cannot be relieved with regular pain medicines including Tylenol. The pain causes her to spend most of her days in bed, requiring her father to do the majority of the house work. (Id. at 50-52.)

The vocational expert (VE), Ms. Alisha Smith, testified to the following. She considered all of plaintiff's previous work experience, including as an accounting clerk, convenience store cashier, personnel clerk, and office manager. The ALJ then asked a hypothetical question for an individual who can perform light work, lift 20 pounds, stand and walk for six hours a day and sit for at least six hours a day while only understanding routine tasks and instructions. The VE testified the hypothetical person could not perform any of plaintiff's past work. (Id. at 53-55.)

The second hypothetical question posed by the ALJ assumed someone who could perform sedentary work, lift ten pounds occasionally, stand or walk for two hours a day, sit for six hours a day with normal breaks, while able to understand and carry out simple routine tasks and directions. The VE testified this hypothetical person could perform at least three different jobs present in the local and national economies including stuffer, cutter/paster, and pharmaceutical processor. (Id. at 55-56.)

## DECISION OF THE ALJ

On December 12, 2013, the ALJ issued a decision unfavorable to plaintiff. The ALJ found plaintiff had not engaged in substantial gainful activity since June 20, 2008, the alleged onset date. He found plaintiff's obesity, depression, anxiety, degenerative disc disease, and sacroiliitis following spinal fusion surgery were severe impairments. (Id. at 18-19.)

The ALJ also found that none of plaintiff's impairments, or combination of impairments, reached the severity required for the presumed disabilities listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. The ALJ strongly considered the combination of plaintiff's physical ailments with her mental impairments. In order for a mental impairment to qualify under Appendix 1, it must result in at least two of the following criteria: (1) marked restriction of activities in daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. The ALJ found plaintiff suffered mild restrictions in (1), moderate difficulties in (2) and (3), and no episodes of decompensation. (Id. at 19-21.)

The ALJ found plaintiff had a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b). To decide this the ALJ followed a two-step process: (1) he determined whether there is an underlying medically determinable impairment capable of reasonably causing plaintiff's pain or other symptoms; and (2) after finding the impairment evaluate the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limit her functioning. (Id. at 21.)

To fulfill Step One of the five-step process the ALJ, after considering the whole record, determined the impairments could reasonably cause plaintiff's symptoms. These impairments include persistent back pain, depression, and restlessness. The ALJ also considered medical evidence showing other impairments including low self-esteem, lack of motivation, memory problems, and inability to concentrate. (Id. at 22.)

To fulfill the second step, the ALJ looked at the intensity, persistence, and limiting effects of the symptoms to find to what extent they limit plaintiff's actions. The ALJ discredited plaintiff's testimony. The ALJ said plaintiff complained of pain only beginning in June 2012, but still maintained a full range of motion. Also, there are multiple pieces of medical evidence pointing to pain being isolated and minimal. The lumbar spine x-ray and MRI showed only minimal damage, while the post fusion surgery notes show only improvements, rather than more pain. Several other physical examinations during this period did not note any increase in pain being reported. These inconsistencies caused the ALJ to decide that plaintiff's physical impairments were not greatly limiting. (Id. at 22-23.)

Turning to the psychiatric symptoms reported by plaintiff, the ALJ points out that the records from Bootheel Counseling Services show plaintiff was stable from January thru May 2011. Further, Dr. Miller supported this conclusion in April 2011, by reporting no mood swings and a normal attention span and concentration. In June 2011, during the initial visit with Dr. Khot, at Community Counseling Center, plaintiff was given a GAF of 55, indicating only moderate impairment. Further notes from Dr. Khot indicate additional stress over the next few months leading to more anxiety, but medications helped stabilize plaintiff's symptoms. In February 2012, plaintiff reported she was doing better on her medication and was participating in social activities freely. Finally, though she had some periods of increased depression, Dr. Khot was able to stabilize her by updating her medications. (Id. at 23-24.)

When looking at the record as a whole involving plaintiff's physical and mental impairments, the ALJ found her impairments were not totally disabling but believed they warranted a lowering of her RFC. The ALJ concluded plaintiff was capable of less than the full range of light work. (Id. at 25.)

The ALJ also went through each medical opinion and considered the weight to be given to each and why. The ALJ gave Dr. Patel's opinion great weight, because it was fully supported by the medical evidence in the record. The ALJ gave Dr. Miller's opinion of plaintiff's physical limitations little weight, based on her findings not being

8

supported by medical evidence, including her own medical notes. Further the ALJ gave Dr. Singer's opinions great weight because they were consistent with the medical evidence supporting plaintiff's impairments being controlled by medications. Lastly, the ALJ discounted Dr. Khot's statement because of its fill-in-the-box structure and marking multiple extreme limitations while not providing any medical evidence to support such impairments. (Id. at 25-26.)

Plaintiff's age, education, work experience, and residual functional capacity was presented to the VE. The VE then determined plaintiff could perform jobs with significant numbers in the national economy. These jobs include collator operator, folding machine operator, and housekeeper. (Id. at 27.)

Based on this testimony the ALJ determined plaintiff was able to work in jobs with significant numbers in the national economy. Therefore, the ALJ determined that plaintiff was not disabled. (Id. at 28.)


## GENERAL AND LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply "with the relevant legal requirements and are supported by substantial evidence in the record as a whole." Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. (internal quotations omitted). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to

last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942.

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) one or more of her impairments meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant has the RFC to perform past relevant work (PRW). Id.; § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her previous work. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to the previous work, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## DISCUSSION

Plaintiff argues the ALJ's decision must be reversed, because: (1) when determining the mental RFC the ALJ failed to provide "good reasons" for discounting Dr. Khot's opinion as the treating physician; (2) the ALJ failed to address the medical opinions of Dr. Raclaw; and (3) the record relied on by the ALJ is not substantial evidence that plaintiff is capable of performing light work.

### I. Opinion of Dr. Kishore Khot

Plaintiff argues the ALJ erred in failing to provide good reasons for discounting Dr. Khot's opinion. If a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence," the opinion will be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). If the treating source is not given controlling weight, the ALJ must give "good reasons" for discrediting the opinions. Id. The ALJ's primary duty is to "resolve conflicts in the evidence" and determine the weight to give each medical opinion. Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006).

An ALJ may discount or disregard the opinion of a treating physician if other medical assessments are supported by better medical support or the treating physician's opinion is inconsistent with the medical evidence or that doctor's notes. Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); See Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir. 2009); Pirtle v. Astrue, 479 F.3d 931, 933 (8th Cir. 2007); Hacker, 459 F.3d at 937. The Eighth Circuit has ruled that a form, like the check-box form used by Dr. Khot, has "little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'" Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2011)). Further, "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (internal quotations omitted).

Dr. Khot assigned plaintiff a GAF score of 55. (Id. at 337.) This score indicates moderate limitations or impairments. See Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010) (citing DSM-IV at 34) (a history of GAF scores of between 52 and 60 was consistent with a finding of moderate limitations). Moderate limitations are supported by Dr. Miller's previous treatments where she found plaintiff was anxious but has no memory loss or mood swings, and a normal attention span and concentration while being cooperative, communicative, logical, and organized. (ECF No. 12 at 336-37, 347.)

On September 5, 2012, prior to Dr. Khot completing the MSSM form, he reported plaintiff was doing well and had experienced no new stressors. (Id. at 482.) After the MSSM's completion Dr. Khot reported she had experienced an increase in crying spells without any new stressors. (Id. at 480.) A month later, her spells were minimized after being prescribed Deplin. (Id. at 478.) Following later exams, Dr. Khot reported plaintiff was stable and doing well on the medications prescribed. (Id. at 476, 682-83.)

Dr. Khot's MSSM form stated that plaintiff was markedly or extremely limited in 16 of the 20 categories listed on the exam sheet. (Id. at 453-54.) Dr. Khot never otherwise noted any concerns with plaintiff's mental capacity, yet reported plaintiff as extremely or markedly limited in all the understanding and memory categories. (Id. at 453.) Because his reports did not support these opinions the ALJ lawfully discredited his medical opinions.

With substantial medical evidence supporting a conclusion contrary to the diagnosis from the treating physician, the ALJ lawfully considered the whole record and concluded the treating physician's testimony merited little weight.

## II. Failure to address medical opinion from physicians

Plaintiff argues the ALJ erred by not acknowledging or addressing Dr. Raclaw's opinion in his psychiatric review. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." Wildman, 596 F.3d at 966 (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Further, an "ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).

Failing to cite a medical opinion does not, by itself, indicate it was not considered by the ALJ. Black, 143 F.3d at 386. No evidence found by a state agency's medical and psychological consultant is binding on an ALJ. 20 C.F.R. § 404.1527(e)(2)(i).

In December 2012, Dr. Raclaw completed a Psychiatric Review Technique form by compiling all available medical information for plaintiff. (ECF No. 12 at 464-74.) In this review he recognized problems arising from Dr. Khot's previous MSSM by concluding it "consists of check marks and lacks supportive objective data." (Id. at 474.) Eventually Dr. Raclaw concluded that without further information he is not able to render an opinion on the mental stability and health of plaintiff. (Id.)

Much of Dr. Raclaw's report supports the ALJ discrediting Dr. Khot's opinion. (Id. at 26.) Specifically Dr. Raclaw discounted Dr. Khot's assertions of plaintiff's

memory difficulties without Dr. Khot providing further medical evidence. (Id. at 474.) The ALJ discussed this same issue in the opinion and determined, according to Dr. Khot's treatment notes, plaintiff did not have any severe memory condition. (Id. at 22-24.)

Although the ALJ did not specifically mention Dr. Raclaw's report, the ALJ is only required to fully develop the record and consider all evidence when coming to a final conclusion. The ALJ considered and the specifically addressed issues Dr. Raclaw's report brought to light without specifically mentioning the report. The ALJ sufficiently considered and evaluated the record evidence.

## III. Proper support for RFC claim

Plaintiff contends the ALJ's RFC finding is not supported by substantial evidence and was improperly based on giving great weight to Dr. Singer's medical opinion. "[T]he record must include some medical evidence that supports the ALJ's residual functional capacity finding," Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000), but "an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007).

The RFC is the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is a medical opinion determined by the ALJ and as such it must be supported by some medical evidence, Krogmeier, 294 F.3d at 1023, but "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination" should not be used as substantial evidence to determine the RFC. Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003). The Commissioner can rely on such evidence as "[m]edical records, physician observations, and the claimant's subjective statements about his capabilities." Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

In this case the ALJ found that plaintiff's RFC included performing less than the full range of light work (i.e., lifting, carrying, pushing, or pulling 20 pounds occasionally and ten pounds frequently; standing and walking up to six hours in an eight hour day and

sitting for up to six hours in an eight hour workday).  (ECF No. 12 at 21.)  The ALJ limited the RFC to jobs involving only occasional interaction with the public, as well as brief incidental interactions with coworkers, to accommodate the moderate social difficulties experienced by plaintiff. (Id.) Also the RFC was limited to only jobs which involve understanding, remembering, and carrying out simple, routine and repetitive tasks that include only simple work related decisions.  (Id.)

When assessing information to determine the RFC, the ALJ followed a two-step process.  The first determined what, if any, underlying impairments, which could produce plaintiff's symptoms, could be proven by "acceptable clinical and laboratory diagnostic techniques."  (Id.)  The second step judged the "intensity, persistence, and limiting effects of the claimants symptoms" to determine the limits of plaintiff's functioning.  (Id.)

The ALJ first looked at plaintiff's reported physical impairments.  These were her, chronic back pain which magnified other ailments including anxiety, an inability to concentrate, and memory problems.  Plaintiff testified at the hearing that her physical ailments were so intense and persistent that her father, with whom she lived, had to complete most of the household chores; and she testified that her physical impairments are her primary barrier to employment. (Id. at 22.)

The ALJ found the objective medical evidence did not support the intensity of the impairments she described.  Plaintiff did not note physical pain until April 2012 when she reported she was experiencing pain in her shoulders and knees. Complaints of back pain did not begin until June 2012.  Despite this pain, plaintiff had full range of motion and no remarkable limitations during exams during this period.  Exams over the next few months revealed no limitations in her range of motion.  (Id.)

After some tenderness developed in 2013, the doctor ordered an MRI which showed mild degenerative spondylosis and a small disc protrusion.  With continuing weakness over the next couple of months, plaintiff received a sacroiliac fusion on May 3, 2013.  This caused significant improvement in her symptoms.  In July plaintiff rated her pain at 2/10 and indicated no limitations. (Id. at 22-23.)

Next, the ALJ looked at the psychiatric symptoms experienced by plaintiff, including depression, low self-esteem and a lack of motivation. She first saw Dr. Khot, her treating psychiatrist, in June 2011. During this appointment she reported no recent hospitalizations and no suicidal thoughts. At this time Dr. Khot reported a GAF score of 55 and updated her medicines. A week later she was hospitalized after taking too many pills over the previous two days but, upon examination, her affect, insight, concentration, judgment and memory were all within normal limits. (Id. at 23.)

Over the next few months Dr. Khot reported there were additional stresses but plaintiff's medications were helping. In November of 2011 Dr. Khot reported plaintiff was stable due to her medications. Thereafter, the medical record continued to report she was doing well. In January 2013, plaintiff complained of some crying spells; after Dr. Khot updated her medications the complaints subsided. (Id. at 24.)

Upon this record, the ALJ concluded that plaintiff's impairments, although not extreme as reported by plaintiff's testimony, justified lowering her residual functional capacity. (Id. at 25.)

The RFC is supported by substantial medical evidence from medical reports, plaintiff's statements, and is not based on an individual doctor's report, as argued by plaintiff.

## CONCLUSION

The ALJ's decision is supported by substantial evidence. The ALJ's opinion is affirmed. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 9, 2016.